Ronald PRATE, Leonard LaRosa, Patricia Plumeri, Patricia A. Doyle, Theresa Young, Terrence P. Anderson, Michael A. DiGiovanni, Gary Gennarino, Michael O. Keller, Charles J. Zona, Joseph P. Tantalo, Michael Perry, and Samuel T. Germano, Plaintiffs-Appellees,

v.

Elisha FREEDMAN, City Manager of the City of Rochester, N. Y., Thomas Hastings, Chief of Police of the City of Rochester Police Department, Members of the County of Monroe Civil Service Commission, and Executive Director of the County of Monroe Civil Service Commission, Defendants,

and

John Howard, Johnny L. Smith, and John Wyche, Defendants-Intervenors-Appellants.

Ronald S. ZAVAGLIA, Carol Tschiderer, and Thomas A. Tschiderer, Plaintiffs-Appellees,

v.

Elisha FREEDMAN, City Manager of the City of Rochester, N. Y., Thomas Hastings, Chief of Police of the City of Rochester Police Department, Members of the County of Monroe Civil Service Commission, and Executive Director of the County of Monroe Civil Service Commission, Defendants,

and

John Howard, Johnny L. Smith and John Wyche, Defendants-Intervenors-Appellants.

No. 956, Docket 78–7008.

United States Court of Appeals, Second Circuit.

Argued May 12, 1978.

Decided Aug. 8, 1978.

John A. Gresham, Rochester, N. Y. (Steven L. Brown, Greater Up-State Law Project, Monroe County Legal Assistance Corp., Rochester, N. Y., of counsel), for defendants-intervenors-appellants.

Alice J. Lenahan, Atty., Rochester, N. Y. (Angelo T. Calleri, Antell, Harris & Calleri, Rochester, N. Y., of counsel), for plaintiffs-appellees.

Before WATERMAN, HAYS and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

The central issue upon these appeals is whether John Howard, Johnny L. Smith, et al., who successfully defended a consent judgment obtained by them in a prior civil rights action (*Howard v. Friedman*, Civ.No. 74–234) against attack in the present lawsuits instituted by appellees, which were found by the district court to be "unreasonable and vexatious," may recover their attorneys' fees as costs from those who instituted the new groundless attack. We hold that they are entitled to do so and accordingly reverse an order of the Western District of New York, John T. Curtin, *Judge,* denying such relief and remand the present cases for further proceedings consistent with this opinion.

The prior lawsuit, *Howard v. Freedman*, Civ.No. 74–234 (WDNY), which resulted in the consent decree attacked in the present actions, was a class action filed in 1974 in the Western District of New York by an organization of Afro-American police officers and several black and Spanish-surnamed persons interested in obtaining employment by the Rochester, New York, Police Department. The complaint alleged *inter alia* that a number of the Department's hiring standards and procedures violated Title VII, other civil rights acts, and the federal Constitution. On the eve of trial and after extensive discovery, the parties agreed to a negotiated consent decree, the principal feature of which was a plan for preferential hiring of members of minority groups. The decree provided that separate sublists of qualified white and minority-group applicants would be maintained, and two persons would be selected from the minority-group sublist for employment for every three persons chosen from the white sublist until 25% of the police force consisted of members of minority groups. Paragraph 11 of the decree stated that this preferential hiring procedure was "a temporary measure pursuant to federal law *designed to remedy the racially disproportionate impact of prior employment practices.*" (emphasis supplied) After notice[1] and a hearing, Judge Harold P. Burke approved the order on May 12, 1975, as required by Rule 23(e), F.R.Civ.P., and retained jurisdiction over the action for the purpose of entertaining any future applications that might be made by the parties for interpretation, application, or modification of the judgment.

Thereafter the police department began hiring in accordance with the terms of the consent judgment, which caused dissatisfaction among some white applicants attempting to join the force, including those who were to become appellees in the present consolidated actions. In September 1975 and March 1976, three of the latter filed complaints with the New York State Division of Human Rights. However, this state agency, upon ascertaining that the practices complained of were being compelled by a federal court order, concluded that it lacked jurisdiction to award any relief. On June 21, 1976, some thirteen months after entry of the *Howard* judgment, twelve of those

---

1. Before the hearing to approve the consent judgment, the decree received extensive publicity in the Rochester area. Moreover, six weeks after the approval of the judgment by Judge Burke, at least those appellees who were on the Civil Service list at that time received a letter informing them of the preferential hiring procedure.

who later became appellees here moved to intervene in that case and to set aside the consent judgment on the ground that it required the police department to engage in unlawful "reverse discrimination." However, Judge Curtin, who had assumed responsibility for *Howard,* denied the motion for intervention as untimely. An appeal was perfected from that decision, but it was later withdrawn voluntarily.

Appellees next filed the instant separate suits in the Western District of New York. *Prate* was instituted by the twelve white applicants who had attempted to intervene in *Howard* and had withdrawn their appeal from Judge Curtin's unfavorable decision on that motion. The plaintiffs in *Zavaglia* were two other whites who had not participated in any prior proceedings. Both complaints alleged that the examination and hiring procedures under the *Howard* decree discriminated against appellees in violation of their rights under the Constitution and various statutes, including Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. After consolidating the cases and allowing appellants to intervene, Judge Curtin dismissed both complaints, 430 F.Supp. 1373. First, he held that *Prate* and *Zavaglia* constituted "impermissible collateral attacks" on the *Howard* judgment; concluding that appellees could properly have obtained relief from the effects of that judgment only by filing a timely motion to intervene in the *Howard* case. Second, he concluded that appellees' complaints failed to state a cause of action, pointing to our approval of preferential hiring relief as a means of remedying the effects of unlawful past discrimination in *Rios v. Enterprise Association Steamfitters Local 638,* 501 F.2d 622, 628–30 (2d Cir. 1974). We affirmed the dismissal of the complaints without opinion on Oct. 17, 1977, and the Supreme Court has since denied cert., 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978).

With respect to appellants' application for an award of attorneys' fees, Judge Curtin applied the standard governing awards to successful defendants in Title VII cases which we had announced in *Carrion v.*

*Yeshiva University,* 535 F.2d 722 (2d Cir. 1976). There we held that a plaintiff may be required to pay a successful defendant's fee when the Title VII action is found to be "unreasonable, frivolous, meritless or vexatious." *Id.* at 727. He concluded that this standard had been met under the circumstances of the present cases, remarking that they could be "considered unreasonable and frivolous" in light of *Prate's* mere repetition of claims made in the prior untimely motion to intervene and the substantial body of case law upholding remedial schemes providing for preferential hiring. The parties were directed to submit affidavits concerning the proper amount of an award of counsel fees.

After receiving these submissions, however, the lower court retreated from its apparent intention to grant appellants attorneys' fees. While Judge Curtin adhered to his assessment of the merits of the suits brought by the white applicants, remarking that appellants had made "a very strong argument that this case comes within the *Carrion* rule," he nonetheless refused to award any counsel fees. He concluded:

"[A]fter consideration of the relative position of the parties and the nature of the claims made by the plaintiffs, I find the application for attorney fees should be denied. The burden of paying attorney fees would unfortunately fall on the plaintiffs who were not conversant with the state of law in this area, and not on their counsel who should have been. Therefore, in the exercise of my discretion, I shall deny the motion."

Appellants argue, first, that their request for counsel fees should have been considered under the more favorable standard applicable to successful plaintiffs in civil rights suits, who "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam) (Title II); *Northcross v. Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam)

(Emergency School Aid Act of 1972); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (Title VII). They point out that their role in the cases before us can best be described as that of protecting the enforcement of relief they obtained as plaintiffs in *Howard* and that the equities underlying their application for counsel fees are little different from those associated with the typical successful minority-group plaintiff. Second, appellants claim that they satisfied even the more stringent test applicable to successful defendants and that the lower court's stated reason for denying them attorneys' fees is improper. Because our agreement with this second contention is dispositive of this appeal, we need not reach appellants' first claim.[2]

## DISCUSSION

Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), provides:

"In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

Although this section is phrased in broad, discretionary terms, the Supreme Court has recently held in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422, 98 S.Ct. at 701. As the Court noted, this standard is substantially the same as the one that we announced in *Carrion* and which was applied by the lower court here.

■ The clear import of the reasoning in *Christiansburg* and *Carrion* is that reasonable attorneys' fees should be awarded to a prevailing defendant in a Title VII action found to have been unreasonable, vexatious or groundless unless there exist affirmative reasons for not doing so. Both *Christiansburg* and *Carrion* point out that one purpose of § 706(k), like its counterpart in Title II, was to deter meritless civil rights suits. 434 U.S. at 422, 98 S.Ct. 694; 535 F.2d at 727 n.8. This purpose would plainly be frustrated if district judges could refuse to grant attorneys' fees after finding a suit vexatious in the absence of any equities counseling against an award.

In this case, Judge Curtin concluded that these suits were "unreasonable and vexatious." We agree. Appellees filed suit in the face of a substantial body of case law establishing that they could properly obtain relief from the terms of the *Howard* consent judgment only by filing a timely motion to intervene. *Burns v. Board of School Commissioners,* 437 F.2d 1143, 1144 (7th Cir. 1971); *Black and White Children v. School District,* 464 F.2d 1030 (6th Cir. 1972); *Oburn v. Shapp,* 70 F.R.D. 549 (E.D.Pa.), *aff'd without opinion,* 546 F.2d 418 (3d Cir. 1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977).[3] Moreover, by

**2.** In passing, we note that this argument is not without force. It may well be that defendants may on occasion be characterized as "private attorneys general" who are entitled to the more favorable Supreme Court standard. Indeed, a committee report accompanying the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which was intended to parallel § 706(k), took this position. The report stated: "In the large majority of cases the party or parties seeking [to enforce rights entitling them to the favorable standard] will be the plaintiffs and/or plaintiff-intervenors. However, in the procedural posture of some cases, the parties seeking to enforce such rights may be the defendants and/or defend-

ant-intervenors." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4 n.4 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912 n.4.

**3.** *Cf. Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420, 423–24 (2d Cir. 1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976). In *Kirkland,* we affirmed a district court order allowing whites to intervene in a Title VII suit brought by members of minority groups but limiting their ability to relitigate issues that had been tried prior to their intervention. The limitation would have been superfluous if the whites could have reopened the entire suit by filing a separate action.

the time these suits were filed, we had clearly established that the granting of race-conscious hiring relief in order to eliminate the effects of past discrimination does not violate any provision of federal law. *United States v. Wood, Wire and Metal Lathers International Union, Local 46,* 471 F.2d 408, 413 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973); *Bridgeport Guardians, Inc. v. Bridgeport Civil Service Commission,* 482 F.2d 1333, 1340 (2d Cir. 1973), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975); *Vulcan Society v. Civil Service Commission,* 490 F.2d 387 (2d Cir. 1973); *Rios v. Enterprise Association Steamfitters Local 638,* 501 F.2d 622 (2d Cir. 1974); *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767 (2d Cir. 1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). Seven other Circuits had adopted substantially the same position. *E. g., Boston Chapter, NAACP, Inc. v. Beecher,* 504 F.2d 1017 (1st Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *Contractors Ass'n v. Secretary of Labor,* 442 F.2d 159, 171–174 (3d Cir. 1971), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); *Morrow v. Crisler,* 491 F.2d 1053 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974); *United States v. Local 212, IBEW,* 472 F.2d 634 (6th Cir. 1973); *United States v. Carpenters Local 169,* 457 F.2d 210 (7th Cir.), *cert. denied,* 409 U.S. 851, 93 S.Ct. 63, 34 L.Ed.2d 94 (1972); *Carter v. Gallagher,* 452 F.2d 315 (8th Cir.) (en banc), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); *United States v. Ironworkers Local 86,* 443 F.2d 544 (9th Cir.), *cert. denied,* 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971).

Appellees suggest in response that it was not unreasonable to suggest that the plan for preferential hiring embodied in the consent judgment was overbroad and unsupported by a sufficient showing of past unlawful discrimination. *See Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420 (2d Cir. 1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *EEOC v. Local 638 . . . Local 28, Sheet Metal Workers International Ass'n,* 532 F.2d 821 (2d Cir. 1976); *EEOC v. Local 14, International Union of Operating Engineers,* 553 F.2d 251 (2d Cir. 1977). However, the consent order contained an admission that the hiring plan was "designed to remedy the disproportionate impact of prior employment practices," and such disproportionate impact, unrebutted by any suggestion that the contested practices were "job-related," amounted to an admission of unlawful discrimination for purposes of Title VII, *see Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). There is no indication that this concession, which was made only after extensive discovery, was false or ill-advised,[4] that Judge Burke abused his discretion by approving the settlement without due regard to standards governing this kind of remedial decree, or that the relief embodied in the decree went beyond that which was appropriate in light of the Rochester Police Department's past record.[5]

■ In short, Judge Curtin properly found that these suits were vexatious and unreasonable within the meaning of *Christiansburg* and *Carrion.* It requires no hindsight[6] to suggest that the appellees should have recognized that there was little or no chance that they would be permitted to

---

**4.** Our decision in *United States v. Wood, Wire and Metal Lathers International Union, supra,* foreclosed the argument that preferential hiring relief may only be based on a formal finding of past discrimination made after an evidentiary hearing.

**5.** Nor did *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), make a challenge to the *Howard* judgment reasonable, since that case dealt principally with the meaning of discrimination for the purposes of the

federal Constitution. Title VII was not before the Court.

**6.** In *Christiansburg Garment Co., supra,* the Supreme Court cautioned against resting the conclusion that a particular suit was unreasonable or vexatious on "*post hoc* reasoning," but also clearly stated that a finding of subjective bad faith on the unsuccessful plaintiff's part is not a prerequisite to an award of counsel fees to his adversary. 434 U.S. at 421, 98 S.Ct. 694.

attack the *Howard* judgment through a new suit, much less that the judgment might be overturned as improper "reverse discrimination." Thus, appellants were entitled to an award of reasonable attorneys' fees unless the denial of their application was affirmatively justified, and the question becomes whether Judge Curtin's suggestion that it would be inequitable to burden appellees, as distinguished from their counsel, with an award of fees was an adequate ground for denying appellants' motion.

Upon the facts of this case, we conclude that it was not. In our legal system, an attorney is his client's agent and representative; the client retains ultimate authority over the conduct of litigation. *See* ABA Code of Professional Responsibility EC 7–7 ("In certain areas of legal representation not affecting the merits of the case or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on the lawyer."). Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority. As the Supreme Court stated, in upholding the involuntary dismissal of an action in part because of an attorney's failure to appear at a pretrial conference:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

*See also United States v. Cirami,* 535 F.2d 736 (2d Cir. 1976).

Whether or not appellees' reliance on their attorneys' judgment was misplaced, they are legally responsible for the filing of these actions. The consequences of their attorneys' mistakes should not be visited on the appellants, whose participation in these suits helped to further the salutary purposes of Title VII.

On remand, the district judge is directed to award appellants a reasonable sum as attorneys' fees in accordance with the guidelines set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). We do not foreclose the possibility that an adjustment might be appropriate to take into account the fact that appellants were not solely responsible for the successful motion to dismiss or the possibility that the financial position of some or all of the appellees might make an award of attorneys' fees unjustly burdensome.

The judgment of the lower court is reversed and the case is remanded for further proceedings not inconsistent with the foregoing.