Michael KANE, Plaintiff,

v.

CITY OF NEW YORK, Mayor Edward Koch, and Graubard Moskovitz McGoldrick Dannett & Horowitz, Defendants.

No. 79 Civil 0078.

United States District Court, S. D. New York.

March 19, 1979.

Michael Kane, pro se.

Graubard Moskovitz McGoldrick Dannett & Horowitz, pro se.

Steven M. Gerber, New York City, of counsel, for defendant Graubard Moskovitz McGoldrick Dannett & Horowitz.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants City of New York and Mayor Edward Koch; Ronald D. Carmon, New York City, Asst. Corp. Counsel, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The discharge in May 1975 of plaintiff, Michael Kane, from his position as doorman for an apartment house at 980 Fifth Avenue has spawned numerous state and federal proceedings against the 980 Fifth Avenue Corporation ("the corporation"), the owner of the apartment house; Pease & Elliman, Inc., the managing agent for the apartment house; various individual officers and directors of the corporation; Graubard Moskovitz McGoldrick Dannett & Horowitz, a New York City law firm which represented the defendants in prior actions; and Seymour Schwartz, a state court judge. The instant action is the twelfth proceeding and the fourth commenced in this Court, all centering about Kane's discharge. The latest additions to the list of defendants are Mayor Edward Koch and the City of New York. The Graubard law firm, codefendant herein, now moves to dismiss the complaint on the ground of res judicata and for a permanent injunction restraining plaintiff from instituting any further suits in any court in the United States relating to his discharge or to events arising out of his litigation of that discharge. The Mayor and the City join in the motion.

Following Kane's dismissal, the union representing the employees at 980 Fifth Avenue initiated an arbitration proceeding pursuant to the collective bargaining agreement. An award was rendered in favor of the corporation in February 1976, finding that Kane's discharge was for just cause.[1] Kane also filed charges of religious discrimination by the corporation with the New York City Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"), which ended in determinations adverse to Kane by the City Commission in August 1975[2] and by the EEOC in October 1975.[3] Thereafter, on January 15, 1976, Kane commenced an action in this Court under Title VII of the Civil Rights Act of 1964, 42 U.S.C., sections 2000e *et seq.*, alleging that he was discharged because he is Jewish. In January 1978, after a de novo trial on the merits, Judge Brieant found that the corporation was unaware of Kane's religious affiliation and that he was not discharged because of religious discrimination.[4]

After filing the religious discrimination action in this Court, Kane brought two suits in the state courts—one for wrongful discharge and slander,[5] and the other for unpaid wages on a purported oral personal contract with his employer over and above the union contract.[6] Both actions were removed to the federal courts by the corporation. In September 1976, Judge Brieant

1. *Pease & Elliman, Inc. v. Local 32B, Service Employees International Union*, Case No. 1330 1475 75 (Feb. 20, 1976) (Roberts, Arb.).

2. *Kane v. 980 Fifth Ave. Corp.*, Case No. 6985–EP (Aug. 23, 1975).

3. *Kane v. 980 Fifth Ave. Corp.*, Charge Nos. TNY 6–0311, 6–0009, 6–0511 (Oct. 31, 1975).

4. *Kane v. 980 Fifth Ave. Corp.*, No. 76–266 (S.D.N.Y., judgment filed Jan. 16, 1978). The Court's findings of fact and conclusions of law were stated on the record at the conclusion of the hearing on January 6, 1978.

5. *Kane v. 980 Fifth Ave. Corp.*, Index No. 02910/76 (Sup.Ct., Feb. 19, 1976).

6. *Kane v. 980 Fifth Ave. Corp.*, Index No. 21003/76 (Civ.Ct.N.Y., Feb. 19, 1976).

granted summary judgment for the defendant in the suit for wrongful discharge and slander, finding the issues precluded by the arbitrator's award.[7] The suit for unpaid wages on the alleged oral contract raised no federal claim and was therefore remanded to the state courts[8] where, after a trial in New York City Civil Court presided over by Judge Blangiardo, the jury returned a verdict in favor of the employer.[9]

Following these "substantive" actions, Kane brought a Small Claims Court suit against the bonding company on two removal bonds posted by the corporation in removing the wrongful discharge and unpaid wages suits.[10] The action was stayed until plaintiff applied for costs in the federal court. On Kane's application, Judge Brieant held that the wrongful discharge case had been properly removed, but the unpaid wages claim had not, and awarded plaintiff $100 costs.[11] Kane then returned to Small Claims Court once again to press his claims on the removal bonds. The suit was dismissed on the grounds of res judicata and plaintiff was directed by Judge Schwartz to seek the Court's permission before filing any further suits in that court.[12]

Undeterred by these adverse rulings, Kane then embarked on a series of suits alleging various improprieties and misconduct during his first sojourn through the courts. By this time, his complaints were both longer and more vitriolic, sparing few who had any connection with the prior suits, with the exception of Judge Brieant. In March 1977, he sued the corporation and four individuals, who he alleged were its owners and directors, in State Supreme Court. In addition to repeating his prior charges of wrongful discharge, breach of a personal oral contract, and religious discrimination, he now claimed that the building at 980 Fifth Avenue was a commercial, rather than residential, building and that the defendants had conspired to defraud him of an additional $36 per week in wages provided for in union contracts for commercial buildings.[13] He further alleged that the corporation owed him a duty as his employer, that Irving Moskovitz, an officer of the corporation and member of the Graubard law firm, owed him a duty as an attorney and that both duties had been breached. Finally, he claimed that defendants' counsel, the Graubard law firm, had violated section 487 of the New York Judiciary Law by suppressing relevant documents and procuring false testimony in prior proceedings, thus entitling him to damages. Judge Riccobono dismissed the complaint on the grounds of res judicata despite the addition of the individual defendants.[14]

Kane then returned to the federal court against the same defendants and the case

7. *Kane v. 980 Fifth Ave. Corp.*, No. 76–1244 (S.D.N.Y., mem. endorsement filed Sept. 30, 1976), *appeal dismissed*, No. 76–7573 (2d Cir., Jan. 20, 1977).

8. *Kane v. 980 Fifth Ave. Corp.*, No. 76–1309 (S.D.N.Y., May 12, 1976).

9. *Kane v. 980 Fifth Ave. Corp.*, Index. No. 21003/76 (Civ.Ct.N.Y., judgment entered Jan. 12, 1977).

10. *Kane v. Fidelity & Deposit Co. of Maryland*, S.C. Index No. 7867/76 (Civ.Ct.N.Y., Small Claims Pt., Kings County, May 26, 1976).

11. *Kane v. 980 Fifth Ave. Corp.*, Nos. 76–1244, 76–1309 (S.D.N.Y., mem. endorsement filed Nov. 8, 1976). On March 1, 1977, Kane filed another motion to recover costs on the removal bond in the wrongful discharge action (No. 76–1244), naming the defendant as "Fidelity and Deposit Co. of Maryland, a/k/a 980 Fifth Ave. Corp." The motion was denied by memorandum endorsement filed March 15, 1977.

12. *Kane v. Fidelity & Deposit Co. of Maryland*, S.C. Index No. 3694/77 (Civ.Ct.N.Y., Small Claims Pt., N.Y. County, May 16, 1977).

13. Kane's conclusion that 980 Fifth Avenue is a commercial building derives from Judge Brieant's holding that the wrongful discharge action had properly been removed to the federal courts because employees in *residential* buildings are in an industry "affecting commerce" for purposes of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). *United States v. Ricciardi*, 357 F.2d 91 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966). Kane ignores the reference to residential buildings and focuses instead on the "affecting commerce" language.

14. *Kane v. Hollander*, Index No. 03938/77 (Sup.Ct., Sept. 12, 1977).

was assigned to Judge Brieant. The allegations of his complaint substantially repeated those in the State Supreme Court action, but with the added charges that Irving Moskovitz owed him a duty as an employer as well as an attorney, and that Moskovitz had violated section 487 by failing to disclose the commercial nature of the building. Judge Brieant granted summary judgment for the defendants, holding that the litigation was precluded by res judicata, that all Kane's dealings had been with the corporation and that the individual defendants were entitled to the benefits of issue preclusion.[15]

Still undeterred, plaintiff commenced another action in this Court, premised on "42 U.S.C. §§ 1983 and 1984," wherein he named the Graubard law firm and Judge Seymour Schwartz as defendants. That action, which most closely parallels the instant one, alleged improprieties in almost every state court through which Kane had passed, including bias on Judge Blangiardo's part, jury tampering, perjury and the suppression of documents. Kane further charged that Judge Schwartz had been corruptly influenced to award costs to the defendants in connection with the suit on the alleged personal contract and to deny plaintiff recovery on the removal bonds. Judge Brieant dismissed the suit, noting that "[t]his Court is not entrusted with the power to review the decisions of state courts in state disputes under the guise of enforcing the Civil Rights Act of 1964."[16] He held that judicial immunity barred the action against Judge Schwartz and that the Graubard law firm "who acted in the state court litigation and who are private persons cannot be held liable as claimed coconspirators, simply because as lawyers they activated a judicial officer to proceed in a manner allegedly violative of plaintiff's civil rights."

To the extent Kane states a claim at all in this his latest suit, it is clearly barred by the doctrines of collateral estoppel and res judicata.[17] The salutary purposes underlying these doctrines were recently reemphasized by the Supreme Court: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[18] Each of these interests is implicated in Kane's blatant attempt to circumvent prior rulings. A comparison of the allegations made in prior actions, state and federal, with those herein establishes that he is raising the identical claims except that he now blames all prior judicial improprieties on Mayor Koch and the City of New York.

In Count I of the present complaint, Kane charges the Graubard firm with corruptly securing favorable judgments; he broadens his attack on the state judiciary to include Judge Riccobono; he alleges that the imposition of costs in the unpaid wages suit was the result of bribery of the court clerk, as well as improper conduct on Judge Schwartz's part; and he charges rampant corruption in the New York courts. All these allegations were either directly made in Kane's final suit before Judge Brieant, in which the Graubard firm was a named defendant, or are covered by the principles enunciated therein.

Counts II and III, which allege that the Graubard firm owed plaintiff a duty as employer and attorney, are barred by Judge Brieant's ruling in the prior "fraud" action

**15.** *Kane v. Moskovitz*, No. 77–3435 (S.D.N.Y., Nov. 23, 1977).

**16.** *Kane v. Graubard, Moskovitz, McGoldrick, Dannett & Horowitz*, 442 F.Supp. 733, 735 (S.D.N.Y.1977), *citing Tang v. Appellate Division*, 487 F.2d 138 (2d Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

**17.** *See Gambocz v. Yelencsics*, 468 F.2d 837, 840–42 (3d Cir. 1972); *Wolcott v. Hutchins*, 365 F.2d 833 (2d Cir. 1966) (per curiam); *Boruski v. Stewart*, 381 F.Supp. 529, 534 (S.D.N.Y.1974); *Frost v. Bankers Commercial Corp.*, 11 F.R.D. 195 (S.D.N.Y.1951), *aff'd*, 194 F.2d 505 (2d Cir. 1952).

**18.** *Montana v. United States*, —— U.S. ——, ——, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

against the individual directors of the corporation. As Judge Brieant noted, all Kane's dealings were with the corporation and to the extent he simply changes defendants in subsequent suits, the new defendants are entitled to the benefits of issue preclusion.[19] Count IV of this prolix complaint simply rehashes Count I and repeats charges previously made under section 487 of the New York Judiciary Law.

In Count V, Kane seeks to avoid the bar of judicial immunity, by claiming that Mayor Koch and the City of New York are responsible for the allegedly widespread corruption in the state judiciary. But the substance of Judge Brieant's ruling—that it is not the role of the federal courts to review state court decisions—cannot be so easily circumvented. Moreover, to state a claim for deprivation of rights under 42 U.S.C. section 1983, "the plaintiff must allege the defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates."[20] No nexus is shown here between the City and the individual judicial wrongdoing alleged except that Mayor Koch appoints the judges of the Family and Criminal Courts, where none of plaintiff's actions was tried. Accordingly, defendants' motion to dismiss is granted.

In addition to dismissal of the action, the defendants request that Kane be enjoined from bringing further actions in any court based on his discharge or the litigation arising therefrom. While it is "not uncommon for a disappointed litigant to bring a subsequent action alleging that the adverse decision resulted from prejudice or misconduct of virtually every person in authority who functioned on his claims," an injunction should issue "where it is apparent that the litigation is baseless."[21]

Kane contends that the defendants are barred from making this application based upon a statement of Judge Brieant in one of the earlier cases to the effect that plaintiff could bring as many actions as he pleases. This passing remark made during the course of reargument on the motion to recover on the removal bonds does not foreclose relief to a victim of relentless and unjustified litigation. It is true that litigious affinity alone does not support the grant of an injunction, for "access to the Courts is one of the cherished freedoms of our system of government."[22] But when it becomes clear that the courts are being used as a vehicle of harassment by a "knowledgeable and articulate experienced pro se litigant"[23] who asserts the same claims repeatedly in slightly altered guise, the issuance of an injunction is warranted.[24]

Kane is aware of the remedy of an appeal, having employed that procedure previ-

19. *See Tang v. Appellate Division,* 487 F.2d 138, 142–43 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Gambocz v. Yelencsics,* 468 F.2d 837, 840–42 (3d Cir. 1972).

20. *Morpurgo v. Board of Higher Educ.,* 423 F.Supp. 704, 713 (S.D.N.Y.1976); *accord, Arroyo v. Schaefer,* 548 F.2d 47, 51 (2d Cir. 1977) ("*Respondeat superior* is not a doctrine that is applicable to § 1983 actions.").

21. *Boruski v. Stewart,* 381 F.Supp. 529, 535 (S.D.N.Y.1974); *accord, Browning Debenture Holders' Comm. v. DASA Corp.,* Nos. 78–7083, 78–7084, slip op. at 4601 (2d Cir. Aug. 31, 1978); *Villarreal v. Brown Exp. Inc.,* 529 F.2d 1219 (5th Cir. 1976); *Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972); *Ruderer v. United States,* 462 F.2d 897 (8th Cir.), *cert. denied,* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972); *Ward v. Pennsylvania New York Central Transp. Co.,* 456 F.2d 1046 (2d Cir. 1972); *Ex parte Tyler,* 70 F.R.D. 456 (E.D.Mo.

1975); *Ruderer v. Dep't of Justice,* 389 F.Supp. 549 (S.D.N.Y.1974).

22. *Ex parte Tyler,* 70 F.R.D. 456, 457 (E.D.Mo. 1975); *see Ruderer v. United States,* 462 F.2d 897, 899 (8th Cir.), *cert. denied,* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972).

23. Judge Brieant so described Kane in the final action before him, *Kane v. Graubard, Moskovitz, McGoldrick, Dannett & Horowitz,* 442 F.Supp. 733, 735 (S.D.N.Y.1977).

24. *See Browning Debenture Holders' Comm. v. DASA Corp.,* Nos. 78–7083, 78–7084, slip op. at 4601 (2d Cir. Aug. 31, 1978); *Ward v. Pennsylvania New York Central Transp. Co.,* 456 F.2d 1046 (2d Cir. 1972); *Ruderer v. Dep't of Justice,* 389 F.Supp. 549 (S.D.N.Y.1974); *Boruski v. Stewart,* 381 F.Supp. 529 (S.D.N.Y.1974).

ously;[25] he was informed by Judge Brieant of the "discrete remedies [provided in New York] for the sort of misconduct complained of here"; and he has been repeatedly told that his claims are barred by res judicata. Ignoring all this, he once again initiated a new action. Since there is no reason to believe that the dismissal of this suit will be any more effective than prior dismissals, the Court is impelled to enjoin Mr. Kane from further litigation. Accordingly, the plaintiff is enjoined from instituting any further action in any court in the United States against any person or any entity on account of any matter set forth in this or in any previous complaint, or relating to plaintiff's dismissal from employment at 980 Fifth Avenue or to events arising out of his litigation over that dismissal.

The Graubard law firm also requests an award of attorneys' fees. In *Alyeska Pipeline Service Co. v. Wilderness Society*,[26] the Supreme Court reaffirmed the "American Rule" that, in the absence of statutory authorization, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."[27] An exception to the rule exists when "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[28] In response to that decision, Congress passed the Civil Rights Attorney's Fees Awards Act of 1976 ("Attorney's Fees Act"), which amended 42 U.S.C., section 1988, for the express purpose of remedying "anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision . . . and to achieve consistency in our civil rights laws."[29] In pertinent part, the Act provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[30]

Since this action was brought under section 1983, the Attorney's Fees Act governs defendants' request for an award.

In *Christiansburg Garment Co. v. EEOC*,[31] construing identical language in section 706(k) of Title VII of the Civil Rights Act of 1964,[32] the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, *even though not brought in subjective bad faith*."[33] Although the legislative history was sparse, the Court concluded that Congress could not have intended that "the plaintiff's subjective bad faith [be] a necessary prerequisite to a fee award against him,"[34] for the common law rule already provided for recovery in such a case and a statutory provision would therefore have been unnecessary.[35]

Ordinarily this decision would control the interpretation of the identical language in

---

**25.** He appealed the grant of summary judgment by Judge Brieant in the wrongful discharge action. The Court of Appeals dismissed for lack of jurisdiction.

**26.** 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

**27.** *Id.* at 247, 95 S.Ct. at 1616.

**28.** *Id.* at 258–59, 95 S.Ct. at 1622 *quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

**29.** S.Rep. No. 94–1011, 94th Cong., 2d Sess. 1, *reprinted in* [1976] U.S.Code Cong. & Admin. News, 5908, 5909.

**30.** Pub.L. No. 94–559, 90 Stat. 2641, *codified at* 42 U.S.C.A. § 1988 (Supp. 1974–1977).

**31.** 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

**32.** 42 U.S.C. § 2000e–5(k).

**33.** 434 U.S. at 421, 98 S.Ct. at 700 (emphasis added). The Supreme Court adopted the language used by the Third Circuit in *United States Steel Corp. v. United States,* 519 F.2d 359, 363 (1975), and by the Second Circuit in *Carrion v. Yeshiva University,* 535 F.2d 722, 727 (1976).

**34.** 434 U.S. at 421, 98 S.Ct. at 700.

**35.** *Id.* at 419, 98 S.Ct. 694.

the statute under consideration here,[36] particularly in light of the legislative purpose in amending section 1988 "to achieve consistency in our civil rights laws." But the Senate Report accompanying the Attorney's Fees Act, in contrast to the "fragments of legislative history"[37] on section 706(k), specifically states: "This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in '*bad faith*' under the guise of attempting to enforce the Federal rights created by the sections listed" in the bill.[38] The problem raised by this language and its seeming contradiction of the standard for recovery set in *Christiansburg* need not detain us for long, however, for in any event the Court finds that the instant action was brought by the plaintiff in bad faith.

Kane has been a persistent and calculated litigator. He has been afforded not just one "full and fair opportunity" to litigate the circumstance surrounding his discharge, but three—an arbitration proceeding on the merits of his union contract claim; a jury trial on the merits of his alleged personal contract claim; and a de novo federal trial on the merits of his religious discrimination claim. Despite the denials of relief in each of these actions, he continued to initiate numerous federal and state suits which were clearly harassing in purpose. His vituperative charges have included "bribery," "perjury," "conspiracy," "corruption" and "judge fixing." Even the jury that found against him has been included in the sweep of his charges. His numerous actions have imposed upon the defendants heavy legal costs. The Graubard firm alleges that to date the cost of litigation in resisting plaintiff's charges total in excess of $50,000.

■■ The fact that one appears pro se is not a license to abuse the process of the Court and to use it without restraint as a weapon of harassment and libelous bombardment. The injunction herein ordered is fully warranted to put an end to such activity. Under ordinary circumstances, the Court is reluctant to grant an award of attorneys' fees against a pro se litigant.[39] But that status gives him no greater right than any other litigant and "may not be used to deprive defendants of the same rights enjoyed by other defendants."[40] Commencement of action upon action based on the same facts dressed in different garb,[41] after thrice being rejected on the merits and having been repeatedly warned that the claims were barred by res judicata, can only be explained as malicious conduct. As the Court of Appeals recently stated with respect to the Title VII fee award provision, "reasonable attorneys' fees should be awarded to a prevailing defendant in [an] action found to have been unreasonable, vexatious or groundless unless

**36.** *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir. 1978); *Hughes v. Repko,* 578 F.2d 483, 489 (3d Cir. 1978); *Green v. Ten Eyck,* 572 F.2d 1233, 1243 n.11 (8th Cir. 1978); *Lopez v. Arkansas County Indep. School Dist.,* 570 F.2d 541, 545 (5th Cir. 1978); *Milburn v. Girard,* 455 F.Supp. 283 (E.D.Pa.1978).

**37.** 434 U.S. at 420, 98 S.Ct. 694.

**38.** S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin. News 5908, 5912. The Senate Report also cites with approval the district court opinion in *United States Steel Corp. v. United States,* 385 F.Supp. 346 (W.D.Pa.1974), *aff'd,* 519 F.2d 359 (3d Cir. 1975), the affirmance of which was relied on by the Supreme Court in defining the standard for recovery under § 706(k). Similar to the reasoning of the Supreme Court, the Report drew an analogy to the award provisions in Title II, 42 U.S.C. § 2000a–3(b), as well as Title VII, 42 U.S.C. § 2000e–5(k) and the cases decided thereunder. *Compare* S.Rep. No.

94–1011, *supra* at 3–5, *reprinted in* [1976] U.S. Code Cong. & Admin.News at 5910–12 *with Christiansburg Garment Co. v. EEOC,* 434 U.S. at 416–17, 420, 98 S.Ct. at 697–98, 699. No mention of the Attorney's Fees Act appears in the Supreme Court's decision.

**39.** *Cf. Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 193 (S.D.N.Y.1962), *rev'd,* 324 F.2d 359 (2d Cir. 1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

**40.** *Morgan v. Sylvester,* 125 F.Supp. 380, 388 (S.D.N.Y.1954), *aff'd mem.,* 220 F.2d 758 (2d Cir.), *cert. denied,* 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

**41.** *Frost v. Bankers Commercial Corp.,* 11 F.R.D. 195 (S.D.N.Y.1951), *aff'd,* 194 F.2d 505 (2d Cir. 1952); *see Ruderer v. Dep't of Justice,* 389 F.Supp. 549 (S.D.N.Y.1974).

there exist affirmative reasons for not doing so." [42] The purpose of that provision, like the one at issue here, is to deter meritless civil rights suits—a purpose which "would plainly be frustrated if district judges could refuse to grant attorneys' fees after finding a suit vexatious in the absence of any equities counseling against an award." [43] No countervailing equities exist in this case. Accordingly, the Court finds that an award of counsel fees to the Graubard firm is warranted, which is limited to services rendered in this action. The award is in the sum of $1,000.

Defendants' motion is granted in all respects. Judgment may be entered accordingly.

**42.** *Prate v. Freedman,* 583 F.2d 42, 46 (2d Cir. 1978).

