**Thomas E. HILL and Clyde Wade Sewell, Plaintiffs,**

**v.**

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Defendant.**

**Civ. A. No. 76–H–1479.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 16, 1976.

Thomas E. Hill and Clyde Wade Sewell pro se.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

Plaintiffs, inmates filing *in forma pauperis,* seek declaratory and monetary relief under the Civil Rights Act for allegedly discriminatory treatment on the basis of sex. Plaintiffs assert that women prisoners at the Texas Department of Corrections (TDC) have occasional access to telephones and are granted wide discretion in personal standards of grooming. Male prisoners, they submit, do not have telephone privileges, are forced to shave and are compelled to obey a vague, capriciously applied, haircut rule. Plaintiffs claim that the aforementioned prison policies violate the United States Constitution and Texas law.

Because of a prior action filed in this Court and appealed to the United States Court of Appeals for the Fifth Circuit by

these two plaintiffs, the Court concludes for reasons hereinafter discussed that plaintiffs' present action is brought with malicious intent to abuse the processes of the Court. Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(d) (1966).

## II. PLAINTIFFS' "MALICIOUS" INTENT

### A. Comparing the Instant Action with Civil Action 75–H–1858

Plaintiffs Hill and Sewell were both named plaintiffs in a prior lawsuit styled *Hill, et al v. Estelle,* Civil Action 75–H–1858, in which the Honorable Woodrow Seals granted the Defendant's Motion to Dismiss on January 30, 1976. The case was appealed to the United States Court of Appeals for the Fifth Circuit which affirmed the decision of Judge Seals on August 20, 1976.[1] Ten days later, on August 30, 1976, this present cause of action was submitted for filing by Hill and Sewell.[2] Even a cursory review and comparison of the complaint considered by Judge Seals and the Fifth Circuit Court of Appeals with the instant complaint is sufficient for one to ascertain that the two pleadings are virtually identical in substance and form.

1. *Hill v. Estelle,* 537 F.2d 214 (5th Cir. 1976).

2. In the last two years Hill and Sewell have been parties in the following suits filed in the Southern District of Texas. All but one were filed *in forma pauperis.* Hill was a plaintiff in 18 of the suits while Sewell was a plaintiff in 13.

| Civil Action | Style |
|---|---|
| 75–H–1801 | Hill v. Estelle |
| 75–H–1828 | Hill v. Anderson |
| 75–H–1858 | Hill v. Estelle |
| 75–H–1859 | Ellis Unit v. Cousins |
| 75–H–2004 | Lerma v. Estelle |
| 75–H–2118 | Hill v. Milton |
| 75–H–2119 | Hill v. Schmidt |
| 75–H–2120 | Hill v. Estelle |
| 75–H–2200 | Sewell v. Heard |
| 76–H–77 | Adams v. Estelle |
| 76–H–83 | Sewell v. Hardy |
| 76–H–199 | Sewell v. Estelle |
| 76–H–267 | Hill v. Estelle |
| 76–H–373 | Hill v. Rushing |
| 76–H–439 | Hill v. Estelle |
| 76–H–497 | Hill v. Estelle |

Excluding jurisdictional statements and slight changes in the order of the clauses, the complaints, as submitted, read as follows: [3]

### 1. Civil Action 75–H–1858; The Old Complaint

#### a. Grooming

(1) Male inmates of TDC are required to wear their hair in a uniform, short. They are not allowed beards, mustaches and only the minimum of sideburns.

(2) Female inmates of TDC are allowed to chose the length, style and even color of their hair. They are given the choice of whether they shave, pluck or allow their facial and body hair to grow.

(3) Female inmates are allowed to decorate and personalize their cells. Male inmates must maintain bare walls and drab cells.

(4) Male inmates are stripped of their usual appearance, thus, suffering a personal defacement, depriving the inmate of his sense of identity and presence.

(5) TDC Rules and Regulations, policies and practices that compel male inmates to wear uniform haircuts and the minimum of

| Civil Action | Style |
|---|---|
| 76–H–567 | Lamar v. Estelle |
| 76–H–568 | Lerma v. Cousins |
| 76–H–574 | Lamar v. Estelle |
| 76–H–576 | Franks v. Heard |
| 76–H–607 | Hill v. Estelle |
| 76–H–608 | Hill v. Estelle |
| 76–H–609 | Hill v. Estelle |
| 76–H–821 | Hill v. Estelle |
| 76–H–1026 | Sewell v. Baker |
| 76–H–1137 | Gooden v. Bass |
| 76–H–1342 | Carter v. Estelle |

3. It should be noted that the Court has made some spelling corrections and that the numbers of the paragraphs are not those of the plaintiffs. Instead, the Court has unscrambled the revised order of the allegations contained in the present suit to show the parallel nature and essentially identical content of the pleadings filed in the two lawsuits. However, in order to preserve the substance of the complaints, the Court has made no attempt to correct faulty sentence structure or grammatical errors.

sideburns, are prison efforts that are dehumanization by forced conformity.

(6) The whole process of cutting male inmates' hair really amounts to a grisly flashback into an age when it was a recognized, accepted practice of penal institutions to disfigure prisoners in some fashion so as to mark him, at least for some period of time, to be held up to scorn by the public.

(7) This depersonalization is an attempt to break down the inmate to an acceptable level of subserviency.

(8) These restrictions are not supportable for reasons of prison sanitation, discipline or morale.

(9) The personal appearance of a person is his right to determine, even in prison, unless the officials can support a contrary regulation by compelling reasons.

(10) Unless prison officials can advance a reason for women prisoners, but not men, to wear long hair, this is a plain violation of the man's right to equal protection of the laws since arbitrary discrimination based on sex is unconstitutional. Fourteenth Amendment of the Constitution of the United States, Equal Protection.

### 2. Civil Action 76–H–1479; The Present Complaint

#### a. Grooming

(1) Male prisoners of TDC are required to wear their hair in a uniform manner, short, not exceeding an inch to an inch and a half on top, with only a minimum of sideburns. Beards and mustaches are forbidden.

(2) Female prisoners of TDC are allowed to choose the length, style and even color of their hair. They are given the choice of whether they shave, pluck or allow their facial hair to grow.

(3) Male prisoners on the Ellis Unit who are not working are only allowed to shower and change clothes on Monday, Wednesday, Friday and Sunday.

(4) There are no licensed barbers in TDC. Rule 3.1.4. *Haircuts,* is by action of the agents of Defendant Estelle, arbitrary and capriciously enforced, this same rule being utilized by the Ellis Unit Disciplinary Committee as a means of punishment. The rule is vague and provides no guidelines as to just what constitutes "good taste" or how "properly" a haircut is.

(5) Male prisoners who have their case on appeal are required to cut their hair short and shave their mustaches and beards even though they may be called back to court, released or retried at any time without an opportunity to regain their original appearance concerning their hair, beards, or mustaches.

(6) The convictions of all prisoners with their case on appeal to the Texas Court of Criminal Appeals are not final convictions until they are affirmed by that court, and to compel them to appear at hearings, or retrials with an altered appearance is a violation of the Fourteenth Amendment of the United States Constitution, when female prisoners are allowed to return to court with their appearance intact.

(7) Rules and Regulations of TDC, November 1, 1975, are as follows:

Rule 1.2.6. *The Director's Authority* is defined in Article 6166j, V.C.S. (Vernon's Civil Statutes).

Rule 1.3.3. *Enforcement* No warden, officer in charge, or other employee shall knowingly permit any subordinate or inmate nor shall he himself commit any act or engage in any conduct which would violate these rules and regulations. (remainder omitted by drawer)

Rule 3.1.1. *Bathing* Each inmate will be required to bathe at least once a day, providing facilities are available.

Rule 3.1.2. *Clothes* Each inmate will be required to make a change of clothing at least once a day.

Rule 3.1.3. *Shaving* Each inmate must be clean shaven.

Rule 3.1.4. *Haircuts* Each inmate will be required to have his hair cut properly, within good taste. Barber services are provided for all inmates, and they are expected to avail themselves of this service.

(8) Texas state law requires that there be one (1) licensed barber for every three (3) unlicensed barbers operating.

### 3. Civil Action 75–H–1858; The Old Complaint

#### a. Telephone Privileges

(1) Female inmates are allowed phone calls home every sixty (60) days or so. This privilege is not allowed male inmates.

(2) To deny male prisoners phone calls home is a violation of the Equal Protection Clause of the Fourteenth Amendment.

(3) The treatment afforded male prisoners is cruel and unusual and a violation of the Eighth Amendment since it is discriminatory in violation of the Equal Protection Clause.

### 4. Civil Action 76–H–1479; The Present Complaint

#### a. Telephone Privileges

(1) Female prisoners are allowed phone calls home every sixty (60) days or so. This privilege is denied male prisoners.

(2) It is a violation of state law, Article 6166j, V.C.S., to enforce a rule or regulation that applies to male and female prisoners alike, to male prisoners only or to allow privileges to female prisoners and deny them to male prisoners.

(3) Section 11, Chapter 212, Acts of the 40th Legislature, Regular Session, 1927 (Article 6166j, Vernon's Civil Statutes), was amended (House Bill 989), and signed into law on October 28th, 1975, to read:

'Neither the Department of Corrections nor the director may discriminate against a prisoner on the basis of sex, race, color, creed, or national origin.'

(4) Male prisoners are denied adequate and equal contact and access to the community, their families and lawyers and courts when phone calls are allowed to female prisoners only and not to male prisoners.

(5) For the Defendant to enforce a rule or regulation that is in violation of Texas state law is a violation of the Equal Protec-

tion and Due Process Clauses of the Fourteenth Amendment.

### 5. Civil Action 75–H–1858; The Old Complaint

#### a. Relief Sought

The Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by the conduct of the Defendant unless this Court grants the declaratory relief which Plaintiffs seek.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment granting Plaintiffs:

(1) A declaratory judgment that the Defendant's acts, policy and practices described herein violate Plaintiffs' rights under the United States Constitution.

(2) Compensatory damages in the amount of $25,000 to each Plaintiff from the Defendant.

(3) Punitive damages of $50,000 to each Plaintiff from the Defendant.

(4) Trial by jury on all issues triable by jury.

(5) Plaintiff's costs of this suit.

(6) Such other and further relief as the Court deems just.

### 6. Civil Action 76–H–1479; The Present Complaint

#### a. Relief Sought

The Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by the conduct of the Defendant unless this Court grants the declaratory relief which Plaintiffs seek.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment granting Plaintiffs:

(1) A declaratory judgment that the Defendant's acts, policy and practices described herein violate Plaintiffs' rights under the United States Constitution;

(2) Compensatory damages in the amount of $25,000 to Plaintiffs and each of them, from the Defendant;

(3) Punitive damages of $50,000 to Plaintiffs and each of them, from the Defendant;

(4) Plaintiffs' costs of this suit and reasonable attorney fees;

(5) Such other and further relief as the Plaintiffs are entitled to by law.

■ The present complaint is inflated with verbatim extractions from Texas law and the Rules of the Texas Department of Corrections. However, these superfluous additions cannot and do not camouflage the duplicitous and duplicative nature of the present complaint. Moreover, plaintiffs do not contend that these state laws are unconstitutional on their face or as applied, but rather that they are not obeyed. Such additional allegations, standing alone, do not state a cause of action under the Civil Rights Act.

Also included in the present action are references to access to courts, altered appearances at appellate proceedings, the use of the haircut regulation as punishment, and bathing frequency—matters not raised in the earlier complaint. Plaintiffs have not alleged any specific inability to communicate with the courts as a result of the lack of telephone privileges. Indeed, when viewed in the light of their past multiple case filings as prisoners, it would strain the limits of credibility for them to so claim.[4] Rather, it appears that the reference to court access was inserted in response to the opinion of the Fifth Circuit Court of Appeals in the prior case. After stating that the courts should not "second-guess state prison officials on the length of prisoners' hair," the Court of Appeals went on to say, "The same is true of prison regulations pertaining to making phone calls (plaintiffs have not complained of inability to communicate with courts, counsel, or their families and friends) . . . ." *Hill, supra,* p. 215. Within ten (10) days of the Fifth Circuit opinion, plaintiffs submitted the present complaint alleging that "male prisoners are denied adequate and equal contact and access to the community, their families and lawyers and courts when phone calls are allowed to female prisoners only". The specious nature of this ploy is obvious.

■ Equally non-meritorious are the claims in the present case that appearing at post-conviction hearings in an "altered appearance" (clean shaven and with hair length under 1½ inches) and bathing only four times a week are violative of the Constitution. Plaintiffs' contention that use of the haircut rule as punishment entitles them to relief is also frivolous. Such a means of discipline falls clearly within the ambit of administrative discretion held by prison officials with which courts are loathe to interfere in the absence of extreme circumstances. *Granville v. Hunt,* 411 F.2d 9 (5th Cir. 1969).

More important than the lack of any merit to these additional legal claims is the fact that plaintiffs clearly have fashioned such claims in an effort to subject defendant to repetitious litigation. No new facts are pled which warrant re-examination of plaintiff's basic legal contentions raised in the prior complaint. Rather, plaintiffs have sought to adapt the present lawsuit to comport with the dicta contained in the Fifth Circuit opinion, all without factual basis.

### B. Plaintiffs' Failure to Respond Truthfully to Questions in the Form Complaint

In recent years the federal courts have been swamped by a torrent of prisoner civil rights actions. The Southern District of Texas has been particularly hard-pressed because 12 of the 15 units of the Texas Department of Corrections are located within its jurisdiction. In this regard the Southern District has adopted new procedures and hired new personnel to deal exclusively with prisoner civil rights complaints. This Court also has adopted, with slight modification, the civil rights complaint forms approved in *Watson v. Ault,*

---

4. *See* footnote 2, *supra.*

525 F.2d 886 (5th Cir. 1976). These forms have made it easier for the Court to assess the factual and legal bases of the claim. But the forms have an additional purpose. As explained in footnote 6 in *Watson, supra,* "The questionnaire will also aid in ferreting out those instances where prisoners abuse the processes of the court by multiple filings." (Citation omitted). The question in the form complaint specifically designed to expose abuse by multiple filers is as follows:

"Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

Yes [ ]   No [ ].

"If your answer [to the above] is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)"

Plaintiffs' response to this inquiry was "[NO], not these same facts concerning state law violations". Not only did plaintiffs fail to disclose the multitude of prior suits "relating to [their] imprisonment," but they attempted to evade the full thrust of the question. Their deceptive answer and obvious lack of full disclosure forced this Court to expend an extensive amount of time in research to ferret out the true relationship between these two lawsuits.

## III. CONCLUSION

This disingenuous response, the timing of the second filing, the superficial changes in form between the first and second complaints and the substantially identical nature of the complaints lead to the inexorable conclusion that plaintiffs maliciously have filed a complaint as to previously litigated matters in order to abuse the judicial process with the resultant effect of burdening the Court's already heavy caseload and obstructing the application of justice in more meritorious causes.

Title 28 U.S.C. § 1915(d) provides in pertinent part, "The court may . . . dismiss the case if . . . satisfied that the action is frivolous or malicious". It is beyond cavil that frivolous and malicious suits are abuses of the judicial process and are not permissible under 28 U.S.C. § 1915. *Urbano v. Sondern,* 41 F.R.D. 355 (D.Conn. 1966), *aff'd,* 370 F.2d 13 (2d Cir.), *cert. denied,* 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1966).

It also is within this Court's inherent power under 28 U.S.C. § 1651(a) [5] to enjoin litigants who are using the courts as a stage for their vendetta of harassment or abuse. *Ruderer v. United States,* 462 F.2d 897 (8th Cir. 1972), *cert. denied* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972); *Ruderer v. Department of Justice,* 389 F.Supp. 549 (D.C.N.Y.1974); *Adams v. American Bar Association,* 400 F.Supp. 219 (W.D.Pa.1975); *Grismore v. Burger,* 75–59 (D.C.Utah 1975); and *Afflerbach v. American Bar Association,* 401 F.Supp. 108 (D.Wyo.1975). In light of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this Court approaches the use of such a sanction with great caution so as not to unduly restrict plaintiffs' right of access to the courts. However, this Court cannot stand by idly while plaintiffs file suit after repetitious suit. Rather than wait until plaintiffs file 18 identical suits before enjoining them, as occurred in *Ex parte Tyler,* 70 F.R.D. 456 (E.D.Mo.1975), this Court will act now to stop such abuse from recurring. The plaintiffs clearly possess no constitutional right to harass this Court and state officials with malicious lawsuits.

Therefore, it is hereby ordered that plaintiffs' action be dismissed as malicious under the purview of 28 U.S.C. § 1915(d); and it is further ordered that plaintiffs Thomas E. Hill and Clyde Wade Sewell be hereinafter enjoined from filing any action in federal court in an attempt to relitigate any question of law or fact raised in the District Court and in the Fifth Circuit

---

5. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1966).

Court of Appeals, in *Hill v. Estelle, supra,* in regard to grooming standards and telephone privileges at the Texas Department of Corrections.