Anne M. PAVILONIS, Plaintiff, Appellant,

v.

Edward J. KING et al., Defendants, Appellees.

No. 79–1614.

United States Court of Appeals, First Circuit.

Submitted March 14, 1980.

Decided July 11, 1980.

Anne M. Pavilonis on brief pro se.

Francis X. Bellotti, Atty. Gen., and Stephen S. Ostrach, Asst. Atty. Gen., Boston, Mass., on brief for appellees, Edward J. King, et al.

Jerome Medalie, Steven A. Cohen and Widett, Slater & Goldman, P. C., Boston, Mass., on brief for appellee, Kenneth G. Ryder.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Anne M. Pavilonis appeals from the dismissal of two civil rights actions she filed against various people connected with the Boston schools. She also challenges the district court's entry of an order enjoining her from filing any lawsuit in the federal district court of Massachusetts—and prohibiting the clerk of court from accepting for filing any paper submitted by her—without authorization by a district judge.

Pavilonis' first lawsuit was commenced on December 9, 1977, by a complaint against the then Governor Michael Dukakis, Boston School Committee President Kathleen Sullivan, and Solomon Lewenberg School Principal William I. O'Connell. The body of the complaint read, in its entirety, as follows:

1. This is an action to redress the deprivation under color of a law of the state of Massachusetts of a right secured to plaintiff by Article V Amendment 14 of the Constitution of the United States. Jurisdiction is conferred on this Court by 28 U.S.C. Section 1343.

2. Plaintiff brings this action under 42 U.S.C. Section 1986 to recover damages for defendant's failure to prevent a wrong mentioned in 42 U.S.C. Section 1985, which defendant knew was about to occur and which defendants had the power to prevent, as hereinafter more fully appears. Jurisdiction is conferred on this Court by 28 [U.S.C.] Section 1343.

The second complaint, filed on December 19, 1977, was nearly identical, but named

Northeastern University President Kenneth G. Ryder as an additional defendant.[1]

When Pavilonis moved for appointment of counsel, these cases were referred to a magistrate. Consulting the district court docket, the magistrate found five other complaints filed by Pavilonis, against various defendants including Michael Dukakis and Kenneth Ryder, in which the same language contained in paragraph 2 of the instant complaints was used, apparently without significant elaboration.[2] Of the opinion that the two complaints before him, even read liberally, were "completely devoid of any information that would assist the defendants . . . [in] answer[ing]," were "completely violative of Rule 8 of the Federal Rules of Civil Procedure,"[3] and "appear[ed] frivolous," the magistrate denied the motions for appointment of counsel. Finding that Pavilonis had filed "numerous unsupported actions" that placed an undue burden on the court and deprived other legitimate litigants of a hearing, the magistrate also recommended that she be restricted from filing new actions without permission of a district judge.

Pavilonis filed objections to the magistrate's recommendation, stating that she found the "U.S.C.A. Procedure" for filing a complaint "vague," and indicating that she had interpreted Commentary 1 to Rule 8 as allowing specific facts to be furnished separately. She also asserted that, when served by certified mail, the defendants were furnished sufficient information to enable them to respond to the complaint. In the district court records are copies of letters sent by Pavilonis to the defendants, advising defendants Dukakis, Sullivan and O'Connell that they were being sued for denying her sons "due process of the [Massachusetts] Racial Imbalance Law" by failing to provide them transportation (and in the case of Dukakis, by failure to implement programs and services required by Massachusetts laws, chapters 622 and 636), and advising defendant Ryder that he was being sued for denying Pavilonis due process by withholding federal monies from her.

■ The district judge approved the magistrate's recommendation and, on April 12, 1978, issued an order enjoining Pavilonis from filing new lawsuits without permission of a judge of the District Court of Massachusetts, and ordering the clerk to refuse to file additional papers submitted by her without such permission. The district court, on September 25, 1978, refused to vacate its April 12 order. Thereafter, it denied Pavilonis permission to file two documents: (1) a "motion to dismiss" the city defendants' motion to dismiss, in which she alleged the defendants arbitrarily denied her equal protection of chapters 622 and 636 of Massachusetts law and demanded the implementation of a unitary school system and damages, and (2) a "motion to obtain a ruling" that forced bussing to an inferior school was a deprivation of equal protection of the right to property, assured by the above-cited Massachusetts laws. On September 11, 1979, the complaints were dismissed, and Pavilonis appealed.[4]

---

1. On March 10, 1978, Pavilonis moved to amend the complaint to delete Kenneth Ryder as a defendant.

2. The five suits were filed between September 1977 and January 1978; apart from the two that named Dukakis and Ryder as defendants, two of the suits were against former Secretary of Health, Education and Welfare Joseph Califano, Jr., and the other was against former Welfare Commissioner Alexander Sharp. According to the magistrate's opinion, in two cases Pavilonis furnished some explanation of her claim in response to a motion to dismiss; the magistrate's opinion does not indicate the subject matter of any of these suits. In two of the cases, we have affirmed orders dismissing Pavilonis' complaints for failure to state a

claim, noting that her allegations were vague and conclusory. *Pavilonis v. Ryder*, Misc. No. 78–8059 (June 9, 1978); *Pavilonis v. Califano*, 601 F.2d 571 (1st Cir. 1979). So far as we can tell, both of these suits related in some way to the Boston schools.

3. As the magistrate noted, Rule 8 requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

4. Pavilonis appealed the district court's September 25, 1978 refusal to vacate its April 12, 1978 order, but we dismissed the appeal because final judgments had not been entered in her lawsuits. After the district court dismissed

We have little difficulty upholding the district court's dismissal of the complaints. Although *pro se* complaints are to be read liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972), these complaints are so hopelessly general that they could give no notice of Pavilonis' claims. Even if the letters sent to the defendants could properly be read along with the complaints, they did little to flesh out Pavilonis' allegations. And, although the magistrate's report alerted Pavilonis to the deficiencies in her allegations, the documents she tendered for filing in the months afterward were hardly informative and no curative amendments of the complaints were effected.[5] Thus, Pavilonis' pleadings never met the minimum standards applicable to civil rights cases:

> Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation.

*Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979). *See Leonardo v. Moran*, 611 F.2d 397, 398 (1st Cir. 1979); *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977). Dismissal was therefore warranted.[6]

Whether Pavilonis was properly enjoined from filing additional pleadings or new lawsuits without permission from a district judge is a closer question. In recommending an injunction against her filing new actions without permission, the magistrate relied on *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.1962), *appeal dismissed sub nom. Rudnicki v. Cox*, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963), and *Rudnicki v. Department of Massachusetts At-*

*torney General*, 362 F.2d 337 (1st Cir. 1966). In *Rudnicki v. McCormack*, such an injunction was entered against a plaintiff who had filed "baseless, vexatious, and repetitive" suits against judges, judicial officers, and attorneys, in an effort to relitigate cases that had been dismissed. 410 F.Supp. at 907–09. The court ruled that it had equitable and supervisory power to protect the defendants from harassment and the court itself from the burden of processing frivolous and unimportant papers. *Id.* at 909–11. In *Rudnicki v. Department of Massachusetts Attorney General*, we noted the existence of the injunction against Rudnicki and upheld the district court's denial of leave to file a new action. 362 F.2d at 338. More recently, a similar injunction was entered against another litigant who had filed complaints comprised of vituperative attacks against judges who had ruled against him; upholding the district court's refusal to allow a new complaint of a similar ilk to be filed, we said, "The law is well established that it is proper and necessary for an injunction to issue barring a party, such as appellant, from filing and processing frivolous and vexatious lawsuits." *Gordon v. United States Department of Justice*, 558 F.2d 618 (1st Cir. 1977).

While we reject Pavilonis' argument that enjoining litigation is unconstitutional, *see id.*, we do not think her case fits into the classic *Rudnicki-Gordon* mold. Those cases, like many others from other jurisdictions, involved plaintiffs bent on reopening closed cases and evidently also intent on harassing defendants, often judges who had ruled against them.[7] Here, the magistrate deter-

---

her complaints on September 11, 1979, reiterating its order of April 12, 1978, Pavilonis took the instant appeals.

**5.** We have no reason to doubt that, had Pavilonis proffered an amended complaint with specific factual allegations underlying her claim, the district judge would have allowed her to file it.

**6.** Although Pavilonis seems to argue in her brief that dismissal was improper because the defendants had not yet filed motions to dismiss, we think the court was entitled to act *sua sponte* and was not obliged to have its docket

clogged indefinitely. Pavilonis had adequate warning that her complaints were vulnerable to dismissal and time to defend them or amend them. *Compare Literature, Inc. v. Quinn*, 482 F.2d 372, 374 (1st Cir. 1974) (court may dismiss complaint at its own initiative, but not without affording notice and opportunity to be heard).

**7.** For similar cases in other jurisdictions, *see, e.g., Ruderer v. United States*, 462 F.2d 897, 899 (8th Cir.), *appeal dismissed and cert. denied*, 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972); *Kane v. City of New York*, 468 F.Supp. 586, 590–91 (S.D.N.Y.), *aff'd without op.*, 614 F.2d 1288 (2d Cir. 1979); *Hanson v.*

mined only that Pavilonis had filed "numerous unsupported" actions, using the same deficient complaints. It does not appear that Pavilonis was attempting to reopen closed cases; according to the magistrate's report, when injunctive relief was recommended at least four of Pavilonis' five other lawsuits were still pending. Likewise, although Pavilonis is obviously dissatisfied with the Boston school system and certain individuals connected with it, it is not clear that her litigation was malicious and designed to harass. Furthermore, it is possible that her use of the same complaint in several cases resulted from a misunderstanding of Rule 8, rather than a desire to mask repetitive litigation or to make response by the defendants difficult.

 Nevertheless, Pavilonis' lawsuits were at least to some extent duplicative; for example, in the two cases now on appeal, she sued certain defendants twice in two weeks and there is no apparent difference between the actions. In addition, all her complaints suffered from the same deficiencies. Faced with a situation where its docket was being burdened and defendants were being called upon to answer multiple, impenetrable complaints, the district court was justified in taking action. Although the entry of a broad injunction, pertaining to all pleadings and future lawsuits,[8] was a drastic measure, we are not convinced the court exceeded the scope of the supervisory and equitable powers it was said to possess in *Rudnicki v. McCormack, supra,* 210 F.Supp. at 908–10. We think the injunction must be interpreted as requiring only that Pavilonis satisfy a district judge that her pleadings are sufficiently plain and definite to satisfy Rule 8 and to warrant a response.

This is, appropriately, a considerably lower barrier than was imposed upon Rudnicki, who we held was bound to demonstrate he had a meritorious case, not just to make allegations that would survive a motion to dismiss. *Rudnicki v. Department of Massachusetts Attorney General, supra,* 362 F.2d at 338. *See Rudnicki v. McCormack, supra,* at 911 (plaintiff required to show he had at least a *prima facie* case).

We would, of course, expect that, if a judge denied permission to file a complaint or additional papers, there would be a signed order to that effect.

 Although upholding the district court in this instance, we emphasize that litigiousness alone will not support an injunction against a plaintiff, *Kane v. City of New York,* 468 F.Supp. 586, 590 (S.D.N.Y.), *aff'd without op.,* 614 F.2d 1288 (2d Cir. 1979), and that the use of such measures against a *pro se* plaintiff should be approached with particular caution, *Hill v. Estelle,* 423 F.Supp. 690, 695 (S.D.Tex.1976). Generally, this kind of order should not be considered absent a request by the harassed defendants. We expect that injunctions against litigants will remain very much the exception to the general rule of free access to the courts.

*Affirmed.*

---

Goodwin, 432 F.Supp. 853, 858 (W.D.Wash. 1977); *Hill v. Estelle,* 423 F.Supp. 690, 695 (S.D.Tex.1976); *Adams v. American Bar Association,* 400 F.Supp. 219, 228 (E.D.Pa.1975); *Boruski v. Stewart,* 381 F.Supp. 529, 535 (S.D.N.Y.1974). *Compare Villarreal v. Brown Express, Inc.,* 529 F.2d 1219, 1222 (5th Cir. 1976); *Gambocz v. Yelencsics,* 468 F.2d 837, 842 (3d Cir. 1972); *Ward v. Pennsylvania New York Central Transportation Co.,* 456 F.2d 1046, 1048 (2d Cir. 1972); *Clinton v. United States,* 297 F.2d 899, 900–02 (9th Cir. 1961) (injunctions against relitigation) *with Chandler v.*

O'Bryan, 445 F.2d 1045, 1056–57 (10th Cir. 1971); *Omernick v. Doyle,* 426 F.Supp. 404, 407–08 (W.D.Wis.1977) (injunctions denied).

8. The *Rudnicki* and *Gordon* injunctions only related to lawsuits against state or federal judges, officials or employees. *Gordon v. United States Department of Justice,* 558 F.2d 618 (1st Cir. 1977); *Rudnicki v. McCormack,* 210 F.Supp. 905, 911 (D.R.I.1962), *appeal dismissed sub nom. Rudnicki v. Cox,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963).