18

Antone J. DIAS

v.

Sharon A. BOGINS.

No. C–94–445–L.

United States District Court,
D. New Hampshire.

May 18, 1995.

Antone J. Dias, pro se.

Shara L. Fosnight, Concord, NH, for Sharon A. Bogins.

## ORDER

LOUGHLIN, Senior District Judge.

Currently before the court is defendant's request for protective order. Doc. 22. For the reasons stated below, the request is granted.

## BACKGROUND

The plaintiff and the defendant were both law students at the Franklin Pierce Law Center in Concord, New Hampshire. Plaintiff now resides in the Commonwealth of Pennsylvania. The defendant resides in Maine.

Subject to certain incidences occurring between the parties, plaintiff brought suit against defendant in the Federal District Court for the Eastern District of Pennsylvania. Plaintiff's suit alleged, as a cause of action, slander. Plaintiff's case in the Pennsylvania court was dismissed in 1993 for lack of personal jurisdiction.

Following the dismissal of his complaint in the United States District Court for the Eastern District of Pennsylvania for lack of personal jurisdiction, plaintiff filed, in August, 1994, a complaint in this court. Within his complaint, plaintiff alleged virtually the same set of facts presented in the Pennsylvania case. From those facts, plaintiff maintained that defendant, Sharon Bogins, intentionally revealed, detailed, or otherwise made known to a third party certain false allegations of fact, defamatory in nature, about plaintiff. Specifically, plaintiff maintains defendant stated to the third party that plaintiff had "harassed, stalked and terrorized" her.

On October 5, 1994, defendant filed a motion for summary judgment alleging lack of subject matter jurisdiction. On December 20, 1994, this court granted defendant's motion for summary judgment. In so doing, the court made the following findings:

> In order for this court to exercise diversity jurisdiction the amount in controversy must be in excess of $50,000.00 exclusive of costs and interest. 28 U.S.C. 1332(a)(1).

> \* \* \* \* \* \*

> In the case at hand, the claim that the damages are $50,000.00 or more is fatuous.

> The only person initially cognizant of the alleged slander was Attorney Soltani.

> It also stretches credibility to assume that the plaintiff, residing in Pennsylvania, from one conversation with Attorney Soltani in New Hampshire then representing the defendant, a New Hampshire resident who subsequently moved to Maine could incur even nominal damages from one telephone conversation.

On February 25, 1995, plaintiff filed a motion to vacate the court's December 20th order maintaining that the findings as to subject matter jurisdiction constitute error. Specifically, plaintiff asserted that the United States District Court for the Eastern District of Pennsylvania had addressed the issue of subject matter jurisdiction. According to plaintiff, "[t]he ruling of the federal district court, Eastern District of Pennsylvania on the issue of subject matter jurisdiction was the law of case; the issue was precluded. Defendant should have been estopped from re-litigating this issue." Consequently, according to plaintiff, in light of the decision of the Pennsylvania court finding subject matter jurisdiction, the United States District Court for the District of New Hampshire was obligated to give *res judicata* effect or full faith and credit to the finding.

In addition to the subject matter jurisdiction issue, plaintiff also alleged the court should entertain jurisdiction due to the "fraud, misrepresentation and perjury" on the part of defendant and her counsel. Plaintiff premised these allegations on conflicting exhibits submitted by defendant or her counsel, various statements made by plaintiff and her counsel, and past representation and conduct, in wholly unrelated cases, by defendant's counsel.

On March 31, 1995, this court denied plaintiff's motion to vacate the findings regarding subject matter jurisdiction. The court also denied entertaining plaintiff's arguments concerning fraud, perjury, misconduct and misrepresentation.

By motion dated April 21, 1995 plaintiff noted the court's noncompliance with Fed.R.Civ.P. 58. Within the motion, the plaintiff once again presented to the court his argument concerning subject matter jurisdiction and the deference to be given the order from the Pennsylvania court. With temerity, the plaintiff also suggested that, as a result of the defendant having moved to Maine, the case should be transferred to the Federal District Court, District of Maine.

Again reiterating prior findings, this court complied with Fed.R.Civ.P. 58 but denied plaintiff's requests to now exercise jurisdiction or in the alternative transfer the case to Maine.

As easily anticipated by even a tyro soothsayer, the plethora of redundant and unfounded motions filed by the plaintiff have now prompted the defendant to file a request for protective order. Specifically, recognizing the finding that the federal system lacks subject matter jurisdiction over the proceeding, defendant, within her April 24, 1995 motion, requests the court to issue a protective order preventing the plaintiff from pursuing his cause in any federal district court.

With the arguments presented at the hearing held on May 10, 1995 in mind, resolution of defendant's motion for protective order remains with the court.

## DISCUSSION

### I. Request for Protective Order

■ It is axiomatic that federal courts "possess discretionary powers to regulate the conduct of abusive litigants." *Cok v. Family Court*, 985 F.2d 32, 34 (1st Cir.1993); *Castro v. United States*, 775 F.2d 399, 408 (1st Cir. 1985) ("Federal courts have the inherent power to enjoin litigants who use the courts as a stage for a personal vendetta of harassment or abuse. 28 U.S.C. § 1651(a). *See Ruderer v. United States*, 462 F.2d 897 (8th Cir.), *cert. denied*, 409 U.S. 1031, 93 S.Ct.

540, 34 L.Ed.2d 482 (1972)"). After all, "it is proper and necessary for an injunction to issue barring a party ... from filing and processing frivolous and vexatious lawsuits." *Gordon v. U.S. Department of Justice*, 558 F.2d 618 (1st Cir.1977); *see Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir.1980) (enjoining litigation by issuing protective order is not unconstitutional).

■ To determine the appropriateness of an injunction preventing a litigant from bringing without advance permission any action in a district court, a court must consider the degree to which "indicia supporting such a comprehensive ban are present in the record." *Cok*, 985 F.2d at 35.

■ In the case at hand, although the attempts of plaintiff to find a forum may appear to be a proper pursuit, when the record is closely scrutinized there are substantial indications that the true intent of plaintiff is to haul defendant into a federal forum, irrespective of any court decision holding otherwise. Initially, plaintiff brought his action in Pennsylvania only to have the case dismissed for lack of personal jurisdiction. Plaintiff then filed his action in this court but was unable to survive a motion for summary judgment. Within various motions as well as during the course of the hearing held on May 10, 1995, plaintiff then indicated his desire to have the case transferred to the Federal Court in Maine. Plaintiff blithely ignores the law once he is rebuffed and goes off on another tangent. This necessitates more legal expense and more anguish for the defendant.

Consequential to plaintiff's baseless pursuit in the federal system, a protective order appears to be a viable means in which to abate plaintiff's intent. *See Kane v. New York*, 468 F.Supp. 586, 590 (S.D.N.Y.), *aff'd without opinion*, 614 F.2d 1288 (2d Cir.,1979) ("when it becomes clear that the courts are being used as a vehicle of harassment by a 'knowledgeable and articulate experienced *pro se* litigant' who asserts the same claims repeatedly in slightly altered guise, the issuance of an injunction is warranted.")

Moreover, regarding the myriad of motions and correspondence found in the record, it is clear to the court the vexatious nature of plaintiff's pursuit and his intent to continue his actions as a vendetta against defendant and her counsel. *See Sires v. Gabriel,* 748 F.2d 49, 50 (1st Cir.1984).

The vexatious nature of the plaintiff is evident to the court by regarding a letter (from defendant to plaintiff) intentionally submitted by plaintiff. Without delving into very private details, the letter concerned specific incidences occurring in defendant's life and the relationship between the defendant and the plaintiff. Undoubtedly, the plaintiff sought to use this letter as some form of indication of defendant's instability. However, what the letter establishes for the court is the plaintiff's intent to harass defendant by bringing to light unrelated and irrelevant actions which may portray defendant in an unrespectable light. It is both vexing and perplexing to the court how a letter from defendant, explaining or addressing a particular time of her life filled with turmoil, supports or is an indication of a slander per se allegation.

As further indications of the unreasonable behavior on the part of plaintiff, there are letters within the record which indicate plaintiff continued to contact defendant even after he was instructed not to do so. Specifically, attorneys David H. Ferber and Tony F. Soltani informed plaintiff of the inappropriateness of having direct contact with defendant, but plaintiff defied such suggestions. Equally incomprehensible, by letter dated September 2, 1994, plaintiff took it upon himself to send a letter to defendant's new law partner, informing her of the suit against defendant. Not only is there no indication that the law partner was providing representation to defendant, but the letter appears to be couched in terms of a threat of additional lawsuits if settlement was not forthcoming. Interestingly, within the letter plaintiff reserved the right to directly mail various documentation to defendant, even in light of the fact that defendant had noticeable representation.

As a final indication of the unprofessional and nettling nature of the plaintiff, within a motion for relief from judgment, plaintiff, for no logical reason, made an unwarranted attack on Attorney Soltani. Principally, plaintiff stated that

> Mr. Soltani has a history of playing 'fast and loose' before this court.... It is clear that Soltani filed a 'kitchen sink' pleading in that action.... Plaintiff submits that there is a clear pattern here on the part of Soltani of a disregard for the rule of law, the standards of ethical conduct, and the dignity of the court.

Given the nature of the allegations against defendant, as well as the vituperative statements against or concerning other individuals not parties to the action, it would appear plaintiff is guilty of the precise actions he alleges against others. It is disturbingly humorous that plaintiff's suit against defendant centers around an incident in which defendant allegedly stated to a third party that he (plaintiff) had "harassed, stalked and terrorized" her, when to an objective court, the plaintiff is in fact harassing, stalking, and terrorizing defendant within a judicial forum. Given the actions of plaintiff before the court, one might logically ponder whether the alleged slanderous statements are in fact proper characterizations.

Defendant contends, and this court agrees, that plaintiff's pattern of behavior displays a strong propensity for continuing his legal harassment. Although plaintiff may very well believe his views and allegations are supported by the law, his repeated motions and suit, viewed objectively, are properly regarded as nothing more than an intent to vex, harass, and annoy. Unless prevented from bringing or continuing with further frivolous actions or behavior, it is beyond peradventure that plaintiff will continue to make or pursue related groundless and vexatious claims in the future. In fact, during the course of a hearing conducted before this court on May 10, 1995, plaintiff stated his intention to continue to pursue his action either in state or federal court within the state of Maine. As noted previously, a cursory scan of the record indicates Mr. Dias' motions and papers have, on occasion, been personally insulting and abusive to defendant, her acquaintances, and her attorneys. Similar to the case *Heritage Hills Fellowship*

*v. Plouff,* 555 F.Supp. 1290, 1298 (E.D.Mich. 1983), "[n]ot only has [Mr. Dias] repeatedly filed [motions] asserting the same claim, he also has far exceeded the limits of dignity and decency in the papers filed with the court."

Given the "baseless, vexatious, and repetitive", *Pavilonis v. King,* 626 F.2d 1075, 1078 (1st Cir.1980), nature of plaintiff's motions and suit, the court, in exercising its equitable and supervisory power to protect the defendant from harassment, not to mention the courts themselves from the burden of processing frivolous actions, issues the following protective order against plaintiff. *See Gordon,* 558 F.2d at 618 ("The law is well established that it is proper and necessary for an injunction to issue barring a party, such as appellant, from filing and processing frivolous and vexatious lawsuits.")

Plaintiff shall be permanently and forever enjoined from filing additional pleadings in this case and from relitigating, or attempting to relitigate, by commencing any lawsuit in any federal court, against the defendant with respect to the allegedly slanderous statements made by defendant. Further, if plaintiff believes this order to be erroneous, he is to file an appeal rather than a new lawsuit. If, however, the plaintiff chooses to file any new related lawsuits, thereby defying the order from this court, the defendant is instructed to file a petition to cite plaintiff for contempt. To be explicit as to the sanctions that will follow upon plaintiff's violation of this order, plaintiff will face a possible fine and/or imprisonment as punishment for contempt of this court. Let there be no uncertainty with the plaintiff as to the gravity of the situation. Finally, this court reserves the right to make known to appropriate ethics committees overseeing plaintiff's conduct as a practicing attorney the circumstances of this case.

## II. Subject matter jurisdiction

As a subsequent consideration, for the sake of brevity and in an attempt to enunciate a degree of reason to the legally inept pro se plaintiff, the court will once again, but briefly, address the plaintiff's contention concerning the *res judicata* and full faith and credit effect of the Pennsylvania Federal Court order.

■ To put it laconically, this court will not construe the decision from the Eastern District of Pennsylvania in a manner whereby the issue of subject matter jurisdiction was affirmatively considered and determined to exist. Rather, upon careful review of the order, the decision merely references subject matter jurisdiction by indicating that contestation by defendant of this form of jurisdiction was lacking. Furthermore, it would be atypical for the Pennsylvania court, or any Federal court for that matter, to in one breath make a finding conferring subject matter jurisdiction and in a subsequent breath dismiss the action for lack of personal jurisdiction. After all, if personal jurisdiction were lacking over a party, what possible benefit would be derived in deciding the issue of subject matter jurisdiction?

In short, as for the order from the Eastern District of Pennsylvania, with no personal jurisdiction over the defendant, the effect of the order from the Pennsylvania court should be viewed as only a dance between the plaintiff and the ruling judge. Defendant was not even present in the ballroom. Thus, as the judge concluded that personal jurisdiction was lacking over defendant, the judge could not and did not issue an order that would have a binding effect on her.

■ Similarly, even if one were to assume, for the sake of argument, that the Pennsylvania court took it upon itself to recognize subject matter jurisdiction before dismissing the action for lack of personal jurisdiction, another federal court would not be obligated to give such determination any sort of *res judicata* or full faith and credit recognition. As the Supreme Court has held,

> before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or *the relevant parties, full faith and credit need not be given.*

*Underwriters Nat'l Assurance Co. v. North Carolina Life & Acci. & Health Ins. Guaranty Ass'n,* 455 U.S. 691, 705, 102 S.Ct. 1357,

1366, 71 L.Ed.2d 558 (1982) (citation omitted) (emphasis added).

■ Further, "[a]ll the authorities agree that in order that the doctrine of *res judicata* apply, the court whose judgment is asserted as an adjudication, must have been one. of *competent jurisdiction.* Obviously, also, [a] plaintiff could not, by wrongfully invoking the jurisdiction of the court to do something it was powerless to do, endow it with jurisdiction." *Ellerd v. Southern P.R. Co.,* 241 F.2d 541 545 (7th Cir.1957) (emphasis added); *see also Cherokee Express Inc. v. Cherokee Express Inc.,* 924 F.2d 603, 607 (6th Cir.1991).

In light of the aforementioned case law, this court was not obligated to give *res judicata* effect or full faith and credit to the Pennsylvania court's decision concerning subject matter jurisdiction. This being the case, the United States District Court for the District of New Hampshire was empowered to fully consider whether plaintiff met the requirements necessary for invoking subject matter jurisdiction. Having considered the allegations espoused by plaintiff, the court was originally and still is convinced that plaintiff has no valid hope of recovering $50,-000 or more and that the amount pleaded has to be viewed as colorable for the purpose of conferring jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Department of Recreation and Sports v. World Boxing Association,* 942 F.2d 84 (1st Cir. 1991); *Jimenez Puig v. Avis Rent-A-Car System,* 574 F.2d 37 (1st Cir.1978).

## CONCLUSION

For the aforementioned reasons, defendant's motion for protective order (Doc. 22) is granted.