**Steven S. CROOKER, Plaintiff,**

v.

**John MAGAW, Director, Bureau of Alcohol, Tobacco, and Firearms, Defendant.**

Nos. Civ.A. 98–30028–MAP, Civ.A. 98–30029–MAP, Civ.A. 98–30108–MAP and Civ.A. 98–30172–MAP.

United States District Court, D. Massachusetts.

March 19, 1999.

Steven S. Crooker, Westfield, MA, plaintiff pro se.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for John Magaw, defendant.

## MEMORANDUM REGARDING DEFENDANT'S MOTIONS TO DISMISS AND TO ENJOIN FURTHER LAWSUITS

PONSOR, District Judge.

### I.  *INTRODUCTION*

Plaintiff is a convicted felon prohibited by the Gun Control Act of 1968(GCA), 18 U.S.C. §§ 921–930, from possessing firearms and ammunition in or affecting interstate commerce.  Plaintiff would like to possess certain items that in the ordinary vernacular could be called "ammunition," but that might fall outside the technical

scope of the GCA's prohibition. Before doing so, however, he would like assurances from the Bureau of Alcohol, Tobacco, and Firearms (ATF) that the GCA does not prohibit him from possessing various types of obsolete and homemade cartridges not transported in interstate commerce. He fears that if he possesses such cartridges without prior assurances, he may face serious criminal penalties.

To this end, plaintiff has brought four suits against the director of ATF. In one suit, plaintiff seeks review of ATF's classification of five types of cartridges as "ammunition" under the GCA. In the other three suits, plaintiff seeks declaratory judgments as to whether a plethora of different types of cartridges constitute "ammunition" under the GCA.

Defendant moves to dismiss all four cases and to enjoin plaintiff from bringing allegedly repetitive suits. For the reasons set forth below, this court will allow the motions to dismiss all four cases, and, to a limited extent, allow the motions to enjoin plaintiff from filing repetitive lawsuits.

## II. DISCUSSION

Plaintiff is a convicted felon. He states that he is "state-licensed to possess firearms and ammunition." (Case 98–30108, Docket No. 3). The GCA, however, prohibits plaintiff from possessing any firearm or ammunition in or affecting interstate or foreign commerce and from receiving any firearm or ammunition shipped or transported in interstate or foreign commerce. See 18 U.S.C. § 922(g)(1).

### A. Case 98–30028

On June 15, 1997, plaintiff wrote to ATF to ask whether twelve obsolete pistol and revolver cartridges, including the five at issue here, were classified as "ammunition" under the GCA. (Docket No. 8, Exhibit H1). The purpose of plaintiff's inquiry was clear: he wanted to know whether he could possess the various cartridges without violating the GCA and risking exposure to criminal prosecution.

Defendant sent plaintiff a six and a half page response on September 9, 1997, in which it concluded that all twelve of the cartridges were ammunition because their dimensions rendered them usable in firearms. (Docket No. 8, Exhibit H2). Plaintiff wrote to defendant on January 3, 1998, seeking reconsideration of ATF's decision regarding five of the cartridges. ATF has not responded to the letter. For the purposes of this portion of the discussion, the court will assume that the absence of response constitutes a decision by ATF not to reconsider its original conclusions.

Plaintiff then appealed ATF's classification of these five types of cartridges as ammunition and sought declaratory judgment that they are not ammunition under the GCA. (Docket No. 3). Defendant now moves to dismiss. (Docket No. 7).

■ This court reviews agency actions and decisions with "substantial deference." *Citizens Awareness Network v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 290 (1st Cir.1995). Such decisions will be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. § 706(2)(A)). Particular deference is extended to "technical or scientific matters within the agency's area of expertise." *Id.* A court must affirm an agency's decision if it has a rational basis. *See Conservation Law Found. of New England, Inc. v. Secretary of the Interior*, 864 F.2d 954, 958 (1st Cir.1989).

■ In this case, ATF provided plaintiff with a reasoned response to his inquiry regarding classification of the various types of cartridges. Its response presented an entirely plausible interpretation and application of the relevant provisions of the GCA, and drew upon a wide array of firearms scholarship. Moreover, ATF did not paint with a broad brush; rather, it considered each of plaintiff's twelve requests individually. Although plaintiff may dis-

agree with defendant's ultimate conclusion, ATF's decision was unquestionably supported by a rational basis. In short, nothing suggests that ATF's decision was arbitrary or capricious. Therefore, this court will not overturn ATF's decision and defendant's motion to dismiss case 98–30028 will be allowed.

### B. *Suits for Declaratory Judgment*
#### 1. *Case 98–30029*

Plaintiff lawfully owns an antique twelve-gauge shotgun.[1] On June 12, 1996, he wrote to ATF, "trying to find a way to lawfully acquire ammunition for my shotgun and not violate [the GCA]." (Docket No. 7, Exhibit 1). Plaintiff's letter raised several questions, two of which are at issue here: (1) May plaintiff possess twelve-gauge blackpowder shotshells manufactured in-state and never transported in interstate commerce? (2) May plaintiff possess homemade twelve-gauge blackpowder shotshells never transported in interstate commerce? (Docket No. 3). ATF responded on January 16, 1997 that twelve-gauge shotgun shells are considered ammunition under the GCA, but did not address the interstate commerce aspect of plaintiff's inquiries. (Docket No. 7, Exhibit 2). Plaintiff sent a follow-up letter on April 12, 1997, to which he received no response. (Docket No. 7, Exhibit 3). Plaintiff then filed a complaint for declaratory judgment on both questions. (Docket No. 3). Defendant now moves to dismiss, arguing that plaintiff lacks standing. (Docket Nos. 6 & 7).

#### 2. *Cases 98–30108, 98–30172*

In 1996 and 1997, plaintiff wrote multiple letters to ATF asking whether eighty-five types of obsolete cartridges were exempt from the GCA's definition of ammunition. During the same time period, he made an identical inquiry regarding six additional obsolete cartridge types.[2] Despite several follow-up letters sent by plaintiff, ATF has not responded to plaintiff's requests to classify the ninety-one types of cartridges. Plaintiff filed two complaints seeking declaratory judgments that the cartridges are not considered ammunition under the GCA: one pertaining to the eighty-five types of cartridges (Case 98–30108), the other pertaining to the six additional types of cartridges (Case 98–30172). Defendant moves to dismiss both cases, again contending, among other things, that plaintiff lacks standing.

Standing is a threshold issue in every federal case. If a party lacks standing, then a court lacks jurisdiction to decide a case's merits. *See New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir.1996). The standing doctrine arises from Article III of the Constitution, under which a federal court's jurisdiction is limited to cases and controversies. A party seeking a declaratory judgment must satisfy the case-or-controversy requirement to the same extent as a party seeking any other form of relief. *See Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C.Cir.1995). The requirement is satisfied where the party seeking to invoke federal jurisdiction shows that:

(1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.

---

1. The GCA's definition of "firearm" does not include antique firearms. *See* 18 U.S.C. § 921(a)(3)(D). Under the statute, an antique firearm is one manufactured before 1898. *See* 18 U.S.C. § 921(a)(16)(A).

2. Among the cartridges at issue, for example, were 8 × 60Rmm Guedes M85 Portugese, 8 × 53Rmm Japanese Murata, 9.5 × 60Rmm Turkish Mauser, 11.5 × 57Rmm Spanish Reformado, 10.15 × 63Rmm Serbian Mauser, 11 × 50Rmm Belgian Albini, 11 × 52Rmm Netherlands Beaumont M71/M78, 11.15 × 58Rmm Austrian Werndl M77, and 11.4 × 50Rmm Brazilian Comblain M74.

*New Hampshire Right to Life,* 99 F.3d at 13. A plaintiff need not "expose herself to arrest or prosecution under a statute in order to challenge that statute in a federal court." *Id.* Rather, a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). "[A] credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement." *New Hampshire Right to Life,* 99 F.3d at 13.

■ It has been established, however, that fear of possible future application of a federal criminal statute does not confer standing in a declaratory judgment action. *See Adult Video Ass'n v. United States Dep't of Justice,* 71 F.3d 563, 565–67 (6th Cir.1995); *see also Crooker v. Magaw,* 1996 WL 523794 (D.C.Cir. Aug.28, 1996) (per curiam). "The mere existence of a statute, which may or may not ever . be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Stoianoff v. Montana,* 695 F.2d 1214, 1223 (9th Cir.1983)

The Sixth Circuit articulated this principle in *National Rifle Association v. Magaw,* 132 F.3d 272 (6th Cir.1997), where several plaintiffs claimed to be inhibited from possessing firearms because they feared prosecution:

> The individual plaintiffs aver that they "desire" and "wish" to engage in certain possibly prohibited activities, but are "restrained" and "inhibited" from doing so. They allege that they "are unable and unwilling, in light of the serious penalties threatened for violation of the statute, to obtain and possess the firearms and large capacity ammunition feeding devices prohibited by the statute." ... [T]he individual plaintiffs herein allege merely that they would like to engage in conduct, which might be prohibited by statute, without indicat-

ing how they are currently harmed by the prohibitions other than their fear of prosecution. Plaintiffs' assertions that they "wish" or "intend" to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III. The mere "possibility of criminal sanctions applying does not in and of itself create a case or controversy."

*Id.* at 293 (citations omitted). The court further noted that some of the plaintiffs had submitted a hypothetical question to the ATF and were told that the questioned activity could subject them to federal prosecution. The court held that this threat of prosecution was still too speculative to confer standing. *See id.* at 293–94.

■ The same analysis applies in this case. Citing the government's history of prosecuting him and his brother in cases involving firearms, plaintiff asserts that he will "[w]ithout a doubt" be prosecuted "if he makes a mistake about what he can lawfully possess." (Case 98–30029, Docket No. 11). In this court's view, however, plaintiff's fear that he may face prosecution if he possesses certain obsolete or homemade cartridges is simply too speculative to confer standing. Although plaintiff may be unsure as to whether he may lawfully possess particular obsolete or homemade cartridges, he faces no credible threat of prosecution at this time. Prosecution is not "certainly impending." *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301 (citation omitted).

In candor, it must be admitted that the principles of standing applied by the court here seem to put the plaintiff in an awkward position, as they did some of the plaintiffs in *National Rifle Association v. Magaw.* The proposition that a citizen may expect a responsible agency to advise him whether contemplated conduct might break the law is not, on its face, outrageous. It seems equally plausible, at first glance, that this citizen might expect a court to give him an answer when the agency either declines to give one, or takes too long making a decision.

■ A tougher look at the dilemma, however, produces a different conclusion. To start with, from the agency's point of view, the potential problem is immense. The defendant here did respond to the plaintiff's first limited inquiry. The answer then triggered a request for reconsideration, other requests for answers to hypothetical questions and then further demands for rulings on ninety-one additional types of ammunition. Even a moment's exercise of imagination conjures up almost infinite scenarios where a citizen might want to ask an agency to provide an advisory as to whether conduct "X" violates statute "Y." Indeed, as plaintiff contends, "there are over 1,000 obsolete ammunition cartridges and plaintiff is entitled to seek agency classification of each of them." (Case 98–30028, Docket No. 15). Although specific statutes may perhaps direct an agency to respond in certain defined situations, and an agency may willingly attempt to assist in response to reasonable inquiries, generally speaking administrative agencies do not have an enforceable obligation to perform this sort of advisory mission, for good and practical reasons.

■ More importantly, from the court's point of view, declaratory judgment actions cannot be used to obtain answers to hypothetical questions. As the cases already cited make clear, concreteness of injury is crucial to exercise of judicial power. The Sixth Circuit's *National Rifle Association v. Magaw* case provides a crisp example of the requirement. There, the court divided the plaintiffs into three groups. As to the first, gun manufacturers and dealers, the court found standing because the very existence of the statute in question (the federal Crime Control Act) was actually causing them immediate economic harm. See 132 F.3d at 283. As to the other groups, individual plaintiffs and gun rights associations, the court found no standing despite the conceded restraint and uncertainty

they suffered as a result of the law. *See id.* at 295.

This distinction was pursued in a subsequent decision by the same court, *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522 (6th Cir.1998). In this case, the panel majority found that the plaintiffs possessed standing, in part because they conceded that they actually owned weapons that appeared to fall within the terms of the Columbus ordinance and might utilize a grandfather clause to avoid breaking the law if they knew their firearms were covered. *See id.* at 528–30. This set of facts is far different from the one before the court now, where the plaintiff merely expresses a desire to take some action in the future and wishes to know whether he will be breaking the law.

In the absence of a case or controversy, this court lacks jurisdiction over the three declaratory judgment actions. Accordingly, defendant's motions to dismiss cases 98–30029, 98–30108 and 98–30172 will be allowed.[3]

C. *Defendant's Motions to Enjoin Plaintiff from Filing Repetitive Lawsuits*

■ In all four cases, defendant has filed essentially identical motions to enjoin plaintiff from filing repetitive lawsuits. This court has the discretion to regulate the conduct of abusive litigants. *See Cok v. Family Court of Rhode Island,* 985 F.2d 32, 34 (1st Cir.1993). Such regulation may take the form of injunctive orders designed to ensure that litigants do not misuse judicial resources. *See id.* at 36.

These restrictions, however, "must be tailored to the specific circumstances presented," and "the use of broad filing restrictions against *pro se* plaintiffs 'should be approached with particular caution.'" *Id.* at 34–35 (quoting *Pavilonis v. King,* 626 F.2d 1075, 1079 (1st Cir.1980)). Indeed, the First Circuit has expressed its

---

**3.** As the standing issue is dispositive of the cases, this court need not address defendant's argument that plaintiff's complaints are not ripe for review.

expectation "that injunctions against litigants will remain very much the exception to the general rule of free access to the courts." *Pavilonis,* 626 F.2d at 1079.

█ Mindful of the need to ensure that all litigants have access to the courts, this court will allow defendant's motions to a limited extent only. Plaintiff will be enjoined merely from seeking to relitigate the issues already decided by this court. In other words, because plaintiff lacks standing to seek declaratory judgments that various obsolete and homemade cartridges do not constitute ammunition under the GCA where the ATF has not ruled on the issue and plaintiff does not face a credible threat of prosecution, plaintiff will be foreclosed from filing repetitive suits on these matters. In all other respects, plaintiff will continue to enjoy the same access to this court as all other potential litigants.

## III. *CONCLUSION*

Defendant's motions to dismiss cases 98–30028, 98–30029, 98–30108, and 98–30172 will be allowed. Furthermore, defendant's motions to enjoin plaintiff from filing repetitive lawsuits will be allowed to a limited extent only.